IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| **SAMUEL LEE EWING, JR.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:21-cv-2141-SHL-atc |
| ) | |
| **STATE OF TENNESSEE CRIMINAL** ) | |
| **JUSTICE, SHELBY COUNTY CRIMINAL** ) | |
| **JUSTICE CENTER, SHELBY COUNTY** ) | |
| **SHERIFF OFFICE, WELLPACK** ) | |
| **HEALTHCARE,** ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

Before the Court by Order of Reference[1] is the Motion to Dismiss of Defendant Shelby County Government ("Shelby County"), filed on November 13, 2023. (ECF No. 18.) After Plaintiff Samuel Lee Ewing, Jr. failed to respond to the Motion, the Court entered an Order to Show Cause on December 27, 2023, requiring Ewing to respond to the Motion by January 17, 2024. (ECF No. 20.) Ewing responded on January 16, 2024. (ECF No. 21.) For the reasons below, the Court RECOMMENDS that Shelby County's Motion be GRANTED and that Ewing's claims against it be DISMISSED WITH PREJUDICE. The Court further RECOMMENDS that Ewing's claims against Defendants State of Tennessee and Wellpack

---

[1] Pursuant to ECF No. 9 and Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination or report and recommendation, as appropriate.

Healthcare be DISMISSED WITHOUT PREJUDICE pursuant to Federal Rules of Civil Procedure 4(m) and 41(b) for failure to effectuate service of process and failure to prosecute.

## PROPOSED FINDINGS OF FACT

On March 8, 2021, Ewing filed his Complaint,[2] alleging claims pursuant to 42 U.S.C. § 1983 against the State of Tennessee, the Shelby County Criminal Justice Center, the Shelby County Sheriff's Office,[3] and Wellpack Healthcare. (ECF No. 1.) Ewing asserts that, on February 7, 2020, he suffered a serious injury inside the basketball gym at the Shelby County Criminal Justice Center ("the Jail"). (*Id.* at 2.) As a result of the incident, Ewing claims to have suffered several injuries, including a brain hemorrhage, blood clots behind his right eye, headaches, high blood pressure, shakes, chills, back aches, nervous system damage, and blackouts. (*Id.*)

Along with his Complaint, Ewing submitted two Jail Inmate Grievance Forms, medical treatment invoices, and multiple medical records concerning his post-injury treatment.[4] (ECF Nos. 1-1, 5-1.) The Court takes judicial notice of these attachments to the Complaint. *See Harper v. Shelby Cnty. Gov't*, No. 15-2502, 2016 WL 737947, at *4 (W.D. Tenn. Feb. 23, 2016)

---

[2] The signature page of Ewing's Complaint is dated February 1, 2021. (ECF No. 1, at 3.) However, the postage on the transmittal envelope is dated March 5, 2021, and the Complaint was not received and filed by the Clerk's Office until March 8, 2021. (ECF No. 1-2.)

[3] In the Motion to Dismiss, Shelby County asserts that "[t]he Shelby County Criminal Justice Center and the Shelby County Sheriff's Office are not independent entities subject to suit, so the proper entity for claims arising out of incidents at the Jail is Shelby County Government." (ECF No. 18, at 1.) Ewing does not argue otherwise. Indeed, the Sixth Circuit has acknowledged that "the Shelby County Jail is not an entity subject to suit under § 1983." *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000). "Instead, any such claims are construed as claims against Shelby County itself." *Taylor v. Shelby Cnty. Crim. Just. Ctr.*, No. 20-cv-2351-JDT-cgc, 2021 WL 951666, at *2 (W. D. Tenn. Mar. 12, 2021). As such, the Court will construe Ewing's claims as asserted against Shelby County.

[4] Ewing submitted the medical records on March 16, 2021, approximately one week after filing the Complaint. As such, the Court will treat these records as attachments to the Complaint.

                             PageID 67

(citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)) ("When a Court considers whether dismissal for failure to state a claim is appropriate, the Court may consider the complaint and attached exhibits, as well as any public records, so long as they are referred to in the complaint and are central to the claims contained therein.").

In the first Grievance Form dated October 12, 2020, Ewing claims that his injury was caused "due to poor upkeep of the basketball court an[d] unpadded walls." (ECF No. 1-1, at 1.) He further contends that he suffered a brain hemorrhage and was "hospitalized until March 1, 2020." (*Id.*) Ewing further asserts:

> A representative from Correct Care Solutions informed me that the required surgery needed would have up to 6 months to take place if needed, it has now been 8 months and I've not seen an[] optometrist since March 3, 2020. My vision in my left eye is declining and I am having problems seeing out of it. I am asking the question will the surgery still take place, or will I be left blind for the remainder of my life. I ask one question, will I be having a surgery, not when the surgery is going to happen. Six months has passed and no one has responded. Please help.

(*Id.*) The Jail employee who received the first Grievance Form determined his grievance to be "nongrievable" that same day because "you can only grieve within 30 days" of an incident. (*Id.*)

In his second Grievance Form, dated October 15, 2020, Ewing complains that he received inadequate follow-up medical care for his injuries on October 9, 2020. (*Id.* at 2.) He states:

> On 10–9–20 I was taken to a speech and hearing doctor. On arrival, I was told I didn't have a[n] appointment. I was told by an optometrist that I need an eye surgery after a[n] accident I had at 201 Poplar left me blind. After asking representatives from Correct Care Solutions about is I am still having the surgery, I cannot get a response. I did not ask them when, I ask them is the surgery still going to happen. I am not receiving the care I need at this time from Correct Care Solutions.

(*Id.*) The second Grievance Form does not include any indication of how or whether it was resolved. (*Id.*) Ewing's medical records provide additional detail concerning the severity of his

3

injuries.  For example, the records reflect that Ewing was in a two-week coma due to the traumatic brain injury he suffered on February 7, 2020.  (ECF No. 5-1, at 1.)

## **PROPOSED CONCLUSIONS OF LAW**

In the Motion to Dismiss, Shelby County argues that Ewing's § 1983 claim is time-barred because he failed to file suit within one year of his injury.  (ECF No. 18, at 2.)  Shelby County points out that Ewing was injured on February 7, 2020, but did not file suit until thirteen months later on March 8, 2021.  (*Id.*)  Shelby County also argues that Ewing has not adequately pled a constitutional violation under § 1983.  (*Id.* at 2–3.)  In his Response, Ewing reiterates the severity of his injuries, asserts that Shelby County provided him with inadequate medical care, and complains generally about his conditions and treatment at the Jail.  (ECF No. 21.)

**I.      Motion to Dismiss for Failure to State a Claim**

Ewing's Complaint arguably asserts two claims: a claim arising from the incident on the basketball court, and a claim arising from the medical care he received thereafter.  Though, in addition to those claims, Ewing asserts in his Response to the Motion to Dismiss general complaints about his conditions and treatment at the Jail, those allegations do not appear in his Complaint or in the grievance forms attached to his Complaint.  To the extent Ewing attempts to raise any claims for the first time in his Response, those claims are not properly before the Court. *See Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011) (holding that, under the PLRA, § 1983 claims must be properly exhausted through a prison's grievance procedures before those claims may be brought in court).

With respect to the basketball-court incident on February 7, 2020, Ewing alleges that the court was not properly maintained, resulting in his significant injuries.  (*See, e.g.*, ECF No. 1; ECF No. 1-1, at 1.)  With respect to his claim of inadequate medical care, Ewing asserts that he

4

was told he needed eye surgery as a result of his basketball-court injuries and that the surgery should occur within six months, but he alleges that the surgery did not occur within six months and that Shelby County failed to provide him adequate follow up medical care, specifically on October 9, 2020.  (ECF No. 1-1, at 1–2.)

    A.    <u>Standard of Review</u>

To determine whether Ewing's Complaint states a claim for which relief may be granted, the Court applies the standards under Rule 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  The Court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

5

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se* complaints, "however inartfully pleaded"). Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, but it would also transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)). "A pro se complaint must still 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Shelby v. Greystar Mgmt. Servs., L.P.*, No. 2:17-cv-02650-SHM-cgc, 2018 WL 386647, at *2 (W.D. Tenn. Jan. 11, 2018) (quoting *Barnett v. Luttrell*, 414 F. App'x. 784, 786 (6th Cir. 2011)).

  B. <u>Ewing's Claim Arising from His Basketball-Court Injury Is Time-Barred.</u>

In its Motion to Dismiss, Shelby County essentially argues that Ewing filed his Complaint one month too late to assert a § 1983 claim related to the basketball-court injury that occurred on February 7, 2020. In response, Ewing does not contest Shelby County's assertion

that his claims are time-barred, and he does not provide any additional information that might relate to the timeliness of his claim.

The statute of limitations "applicable to a § 1983 action is the statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claim arises." *Howell v. Farris*, 655 F. App'x 349, 351 (6th Cir. 2016) (quoting *Eidson v. Tenn. Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)). As a result, "[t]he limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)(1)(B)." *Porterfield v. Shelby Cnty. Jail*, No. 2:19-cv-02885-JTF-atc, 2022 WL 822032, at *2 (W.D. Tenn. Mar. 17, 2022) (citing *Eidson*, 510 F.3d at 634–35; *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005)). "Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." *Id.* (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)). "Federal law dictates that the statute of limitations begins to run at the time the plaintiff 'knows or had reason to know' of the alleged injury through 'reasonable diligence.'" *Id.* (citing *Eidson*, 510 F.3d at 635; *Sevier*, 742 F.2d at 272) (dismissing a § 1983 claim filed "eight months too late" as time-barred).

When determining the date on which a pro se prisoner plaintiff files a federal § 1983 complaint, courts employ the "mailbox rule"—the date on which a prisoner either gave "the complaint to Shelby County Jail personnel for mailing to the Court" or mailed the complaint to the Court himself. *Id.* (citing *Houston v. Lack*, 487 U.S. 266, 270, 276 (1988)); *see also Aldridge v. Gill*, 24 F. App'x 428, 429 (6th Cir. 2001) ("The 'mailbox rule' of *Houston v. Lack* applies to the filing of § 1983 suits under the applicable, state statute of limitations."). In addition, the Prisoner Litigation Reform Act, 42 U.S.C. § 1997 ("PLRA"), requires that prisoners exhaust

7

their administrative remedies before filing suit. *See Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." (quoting § 1997e(a))). Because of this mandatory process, "the statute of limitations which applied to [the plaintiff's] civil rights action was tolled for the period during which his available state remedies were being exhausted." *Id.*; *see also Wright v. Andrews*, No. 20-cv-2916-JDT-cgc, 2021 WL 4255636, at *2 (W.D. Tenn. Sept. 17, 2021) (acknowledging that the one-year statute of limitations for § 1983 claims arising in Tennessee is tolled while the plaintiff exhausts administrative remedies, but dismissing the case because the complaint was still untimely notwithstanding the tolling).

Here, Ewing's injury occurred on February 7, 2020, after which he was hospitalized. (ECF No. 1-1, at 1.) During the first two weeks of his hospitalization, he was unconscious and/or in a coma. (ECF No. 5-1, at 1.) Construing the Complaint and its attachments in a light most favorable to Ewing and accepting all factual allegations as true, and considering that the one-year statute of limitations began to run when he knew or had reason to know of his injury through reasonable diligence, the Court concludes that Ewing's statute of limitations began to run on February 21, 2020—that is, fourteen days after Ewing's February 7th injury, when he "w[oke] up from a two-week coma." (*Id.*)

The statute of limitations, however, was tolled while Ewing exhausted his administrative remedies. Ewing's first grievance, dated October 12, 2020, directly relates to his February 7th injury on the basketball court and thus operates to toll the statute of limitations. That grievance was resolved the day it was filed and thus tolled the statute of limitations for one day.

8

Ewing's second grievance, dated October 15, 2020, concerns his complaints about inadequate medical care on October 9, 2020, and does not concern the incident on the basketball court itself. (ECF No. 1-1, at 2.) That second grievance thus does not toll the statute of limitations for Ewing's February 7th injury because "instances of denied medical care are 'discrete unlawful acts'" from the underlying injury that do not relate back to the time of the injury. *Young v. Tenn. Dep't of Corr.*, No. 1:15-cv-00050, 2015 WL 8492463, at *2 (M.D. Tenn. Dec. 10, 2015) (quoting *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 466–67 (6th Cir. 2010)). Here, Ewing brings discrete claims—one for the allegedly unsafe condition of the basketball court, which Ewing alleges caused his injuries, and the other for failure to provide timely surgery, necessitated by those injuries.[5] As such, the claims of denied medical care are not continuing violations from the basketball-court injury that would toll the statute of limitations during the second grievance process. *See Owusu v. Mich. Dep't of Corr. Pain Mgmt. Comm.*, No. 16-cv-12490, 2019 WL 6139486, at *7 (E.D. Mich. July 19, 2019), *report and recommendation adopted*, 2019 WL 4627585 (E.D. Mich. Sept. 24, 2019) (citing *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003); *Siggers*, 652 F.3d at 692–93) (acknowledging that "the statute of limitations is tolled during the grievance process," but recognizing that the "continuing violation" doctrine is unavailable to plaintiffs "who allege a series of discrete violations of their civil rights"). The statute of limitations applicable to Ewing's basketball-court-injury claim was therefore tolled for a total of one day.

---

[5] Construing the allegations in Ewing's favor, it appears that his claim related to the untimely surgery is not time-barred. In his first grievance, Ewing alleges that he was told, on March 3, 2020, that he would need eye surgery within six months. (ECF No. 1-1, at 1.) Ewing's claim that the surgery was not timely scheduled would therefore have arisen six months later, or in early September of 2020. Ewing filed his Complaint on March 8, 2021, within one year of that date.

9

Finally, under the mailbox rule, Ewing's Complaint is considered filed, for purposes of the statute of limitations, on March 5, 2021, the date of the postage on the transmittal envelope. (ECF No. 1-2.)  Though Ewing dated his Complaint February 1, 2021 (ECF No. 1, at 3), he has offered nothing to show that he submitted it to the Court at any time prior to March 5th, through officials at the Jail or otherwise.  Indeed, the envelope indicates that his Complaint was mailed privately, with a return address of Ewing Moving & Storage, Inc., 1814 S. Third Street, Memphis, TN 38109, on March 5th.  (ECF No. 1-2.)

In light of the foregoing conclusions, Ewing filed his basketball-court-injury claim eleven days late.  Based on Ewing's allegations, the statute of limitations began running, at the latest, on February 21, 2020, and was tolled for one day.  As a result, the limitations period expired on February 22, 2021, but Ewing filed his Complaint on March 5, 2021.  Nothing else in Ewing's submissions, or otherwise in the Record, suggests a more favorable statute-of-limitations timeline for Ewing.  The Court acknowledges that this result may

> at first blush seem unfair.  There is, however, a broader principle at stake.  As the Supreme Court has stated: "Statutes of limitations, which are found and approved in all systems of enlightened jurisprudence, represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."

*Hughes v. Vanderbilt Univ.*, 215 F. 3d 543, 549 (6th Cir. 2000) (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979)).  As a result, the Court recommends that Ewing's § 1983 claim against Shelby County based on his February 7th injury be dismissed as time-barred.

C.      Ewing Fails to State a § 1983 Claim Against Shelby County.

Ewing has failed to adequately plead a claim against Shelby County under § 1983.  To bring a § 1983 claim, Ewing must identify (1) "a right secured by the United States Constitution"

10

and (2) "the deprivation of that right by a person acting under color of state law." *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020) (quoting *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001)).

As to the first prong, the Court construes Ewing's claims as arising from the Fourteenth Amendment's due process clause.[6] "[P]retrial detainees have a constitutional right to be free from deliberate indifference to serious medical needs . . . ." *Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 605 (6th Cir. 2022); *see also Tullos v. Balk*, No. 1:18-cv-883, 2018 WL 5306906, at *4 (W.D. Mich. Oct. 26, 2018) (holding that § 1983 conditions-of-confinement claims brought by pretrial detainees, such as those related to the upkeep of jail facilities, arise under the Fourteenth Amendment's due process clause) (collecting cases).

As to the second prong, Shelby County, as a municipality, may only be liable to Ewing if his injuries were sustained pursuant to an unconstitutional custom or policy of the County itself. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691–92 (1978); *Troutman*, 979 F.3d at 489 ("A municipality 'cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents.'" (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 433, 441 (6th Cir. 2000))). "A plaintiff can

---

[6] Given that Ewing alleges he was housed at the Shelby County Jail at the time of the incident, "the Court will presume for present purposes that he is a pretrial detainee," though the Record does not otherwise disclose his custodial status. *See Thompson v. Cassidy*, No. 1:24-cv-185, 2024 WL 2886571, at *2 (E.D. Tenn. June 7, 2024). His claims are therefore "analyzed under the Fourteenth, rather than the Eighth, Amendment." *Id*. (citing *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 596 (6th Cir. 2021)). This result comports with the directive to construe the pleadings in Ewing's favor, as a pretrial detainee must demonstrate a reduced level of mental culpability on the part of a government official—"reckless disregard"—whereas a prisoner must demonstrate the official knowingly disregarded a risk. *See Little v. City of Morristown, Tenn.*, Nos. 23-5302/5303, 2024 WL 1530468, at *2 (6th Cir. Apr. 9, 2024) (citing *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021)).

11

establish such an unconstitutional custom or policy by producing evidence that shows (1) the existence of an illegal official policy, (2) that an official with final decision-making authority ratified illegal actions, (3) a policy of inadequate training or supervision, or (4) a custom of tolerance or acquiescence of federal rights violations." *Gomez v. City of Memphis*, Nos. 21-5473/5644, 2023 WL 7287100, at *6 (6th Cir. Aug. 4, 2023) (cleaned up) (quoting *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)).

In this case, Ewing has not identified any municipal policy or custom that caused any of his alleged injuries (the injury on the basketball court or the failure to schedule his eye surgery within six months). Indeed, Ewing has failed to identify any County policy, custom, or policy-maker relevant to this case at all. His failure to do so warrants dismissal of his claims against Shelby County. *See, e.g.*, *Cousino v. Twp. of Marshall*, No. 17-1922, 2018 WL 3854027, at *2 (6th Cir. Mar. 6, 2018) (affirming dismissal of the pro se plaintiff's § 1983 claims under the PLRA and denial of leave to amend where the plaintiff failed to allege "an official policy or custom of the Township that resulted in a violation of his constitutional rights"); *Lovelace v. City of Memphis Police Dep't*, No. 2:08-cv-2776-SHM, 2010 WL 711190, at *3 (W.D. Tenn. Feb. 24, 2010) (dismissing § 1983 claims where the plaintiff "fail[ed] to allege that any specific policy or custom was the moving force directly causing the alleged constitutional violations"); *Roberts v. Wayne Cnty., Ky.*, No. 6: 22-63-HRW, 2022 WL 1085767, at *1 (E.D. Ky. Apr. 11, 2022) (dismissing § 1983 claims when the pro se plaintiff failed to "allege that the assertedly unconstitutional condition about which he complains is the product of a clearly-identified county policy or custom.").

12

## II.     Ewing's Claims Against the State of Tennessee and Wellpack Should Be Dismissed for Failure to Effectuate Service of Process and to Prosecute.

"Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties." *Collins v. Waste Mgmt.*, No. 17-2704-SHL-dkv, 2017 WL 6947871, at *2 (W.D. Tenn. Dec. 22, 2017), *report and recommendation adopted*, 2018 WL 445125 (W.D. Tenn. Jan. 14, 2018) (quoting *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 353 (6th Cir. 2003)). "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Id.* (quoting *Omni Cap., Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Pursuant to Rule 4(l), "[u]nless service is waived, proof of service must be made to the court." Fed. R. Civ. P. 4(l)(1). Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court— on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Complaint in this case was filed on March 8, 2021, and, after a delay not attributable to Ewing, blank summonses were eventually issued to Ewing on February 23, 2023. When Ewing failed to complete and return those summonses for issuance, on June 15, 2023, the Court entered its Order to Effectuate Service of Process and to Show Cause. (ECF No. 10.) That Order required Ewing to submit proof of service on all Defendants, including the State of Tennessee and Wellpack, by August 16, 2023.

When Ewing still failed to do so, Chief United States District Judge Sheryl H. Lipman entered a Second Order to Show Cause on August 31, 2023. (ECF No. 13.) That Order again required Ewing to submit proof of service on Defendants, this time by September 27, 2023. Ewing was expressly warned that "[f]ailure to do so will result in the dismissal of this action

13

without prejudice." (*Id.* at 2.) Ewing again failed to effectuate service and instead filed a motion on September 27, 2023, requesting additional time to hire a process server. (ECF No. 14.) On September 29, 2023, Judge Lipman granted the motion and again gave Ewing additional time, until October 30, 2023, to obtain service on Defendants. (ECF No. 15.) Once again, Ewing was warned that "failure to comply with this order will result in the dismissal of this action without prejudice." (*Id.* at 2.)

Thereafter, Ewing did obtain adequate service on Shelby County (ECF No. 17), but, as discussed in this Court's December 27, 2023 Order to Show Cause, he has failed to demonstrate service on the State of Tennessee or Wellpack. (ECF No. 20.) With respect to the State of Tennessee, the docket contains no indication of completed service by Ewing. With respect to Wellpack, on October 24, 2023, Ewing filed a certified mail delivery confirmation card addressed to "Wellpath," reflecting delivery acceptance with an illegible signature on October 20, 2023.[7] (ECF No. 16.) This submission demonstrates that service on Wellpack on October 20th was insufficient.

Though the Federal Rules do not expressly allow for service by certified mail, Rule 4(e)(1) provides that service can be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The Tennessee Rules, in turn, allow for service by certified mail:

> Service by mail of a summons and complaint upon a defendant may be made by the plaintiff, the plaintiff's attorney or by any person authorized by statute. . . . Such person shall send, postage prepaid, a certified copy of the summons and a copy of the complaint by registered return receipt or certified return receipt mail

---

[7] The Complaint (ECF No. 1) and summonses (ECF No. 11) reflect that this Defendant's name is "Wellpack Healthcare," but the certified mail card states "Wellpath" (ECF No. 16). The Court will refer to this Defendant as Wellpack herein.

14

>to the defendant. If the defendant to be served is an individual or entity covered by subparagraph (2), (3), (4), (5), (6), (7), (8), or (9) of this rule, the return receipt mail shall be addressed to an individual specified in the applicable subparagraph. . . . Service by mail shall not be the basis for the entry of a judgment by default unless the record contains either (a) a return receipt showing personal acceptance by the defendant or by persons designated by Rule 4.04 or statute; or (b) a return receipt stating that the addressee or the addressee's agent refused to accept delivery, which is deemed to be personal acceptance by the defendant pursuant to Rule 4.04(11).

Tenn. R. Civ. P 4.04(10). Importantly, "Tennessee Rule of Civil Procedure 4.03(2) provides that service by mail is only complete 'if the return receipt is signed by the defendant, or by a person designated by Rule 4.04 or by statute.'" *Tepe v. Whirlpool Corp.*, No. 1:22-cv-136-KAC-SKL, 2022 WL 4288234, at *2 (E.D. Tenn. Sept. 12, 2022) (citing *Hall v. Haynes*, 319 S.W.3d 564, 577 (Tenn. 2010)) (discussing "Rule 4.03's explicit restriction of who may sign the return receipt").

"The language of Rule 4.03 'sets forth a mandatory requirement rather than a discretionary ideal that need not be strictly enforced to confer jurisdiction over a party.'" *Hall*, 319 S.W. at 577 (quoting *Estate of McFerren v. Infinity Transp., LLC*, 197 S.W.3d 743, 748 (Tenn. Workers Comp. Panel 2006)). When the defendant to be served is a corporate entity, the certified mail must be addressed to a registered agent or other agent authorized to accept service, and the return receipt must be signed by a person authorized to accept service. *Id.* at 583–84 (holding that a return receipt signed by an agent who was authorized to accept mail—but not authorized to accept service of process—did not constitute adequate service under Rules 4.03(2) and 4.04(10) (citations omitted)).

Here, the certified mail card is not addressed to any specific person at Wellpack, and it does not state what was mailed or whether Wellpack was served with a copy of both the complaint and summons, as required by Rule 4(c). (ECF No. 16.) And the certified mail card—

15

with its illegible signature—does not provide the Court with the identity of the person who purportedly accepted service on behalf of Wellpack or whether they were authorized to do so, pursuant to Rule 4(h). It has been over one year since this Court entered its June 15, 2023 Order to Effectuate Service of Process, and Ewing still has not provided proof of adequate service on either the State of Tennessee or Wellpack. As a result, both should be dismissed under Rule 4(m) because Ewing failed to serve them after being provided numerous warnings and opportunities to do so. *See Ahneman v. Fed. Express Corp.*, No. 2:16-cv-02422-JTF-tmp, 2016 WL 11257358, at *1 (W.D. Tenn. Dec. 27, 2016), *report and recommendation adopted*, 2017 WL 623653 (W.D. Tenn. Feb. 15, 2017) (dismissing without prejudice under Rule 4(m) where the plaintiff failed to effectuate service of process after entry of a show cause order that extended the time for service) (collecting cases).

Additionally, because Ewing has failed to effectuate service despite numerous opportunities and warnings, his claims are also subject to dismissal without prejudice under Federal Rule of Civil Procedure 41(b). Rule 41(b) "confers on district courts the authority to dismiss an action for failure of a plaintiff to prosecute the claim or to comply with the Rules or any order of the court." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 736 (6th Cir. 2008) (citing *Knoll v. AT&T*, 176 F.3d 359, 362–63 (6th Cir. 1999)); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962) (recognizing "the power of courts, acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief"); *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013) ("It is well settled that a district court has the authority to dismiss sua sponte a lawsuit for failure to prosecute."). Dismissal for failure to prosecute is a tool allowing district courts to manage their dockets and avoid unnecessary burdens on opposing parties and the judiciary. *See*

16

*Schafer*, 529 F.3d at 736 (quoting *Knoll*, 176 F.3d at 363). The Sixth Circuit therefore affords district courts "substantial discretion" regarding decisions to dismiss for failure to prosecute. *Id.* (quoting *Knoll*, 176 F.3d at 363).

The Sixth Circuit applies a four-factor test to determine if dismissal for failure to prosecute is appropriate:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action.

*Carpenter*, 723 F.3d at 704. "[N]one of the factors is outcome dispositive," but "a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Id.* (citing *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)); *see also Muncy v. G.C.R., Inc.*, 110 F. App'x 552, 555 (6th Cir. 2004) (finding that dismissal "is justifiable in any case in which 'there is a clear record of delay or contumacious conduct on the part of the plaintiff'" (quoting *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 591 (6th Cir. 2001))).

The four *Carpenter* factors weigh in favor of dismissal of these Defendants under Rule 41(b). First, the amount of time that has elapsed from the issuance of the summonses, and since the Court's numerous Orders to show cause, to effectuate service, and allowing more time (ECF Nos. 10, 13, 15, 20), indicates a willful failure to prosecute on Ewing's part. As noted above, it has been over a year since this Court entered its June 15, 2023 Order to Effectuate Service of Process, and Ewing still has not provided proof of adequate service on either the State of Tennessee or Wellpack. And nearly six months have passed since the Court entered its most recent Order to Show Cause on December 27, 2023, which informed Ewing that his proof of

17

service as to Wellpack was inadequate on its face and his proof as to Tennessee was completely missing, and Ewing still has not complied with this Court's multiple orders to effectuate service on these Defendants.

Regarding the second factor, "[a] defendant is 'prejudiced by the plaintiff's conduct where the defendant waste[s] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Wright v. City of Germantown, Tenn.*, No. 11-02607, 2013 WL 1729105, at *2 (W.D. Tenn. Apr. 22, 2013) (quoting *Shavers*, 516 F. App'x at 570). In this case, Ewing has failed to effect service of process, such that the State of Tennessee and Wellpack have not appeared. As a result, the second factor is inapplicable.

The third factor—prior notice, or the lack thereof—is a key consideration in determining whether dismissal under Rule 41(b) is warranted. *Schafer*, 529 F.3d at 737 (citing *Stough v. Mayville Cmty. Schs.*, 138 F.3d 612, 615 (6th Cir. 1998)). This factor supports dismissal, as Ewing was expressly and unambiguously warned in multiple orders over the course of a year that failure to timely prove service of process would result in the dismissal of the State of Tennessee and Wellpack without prejudice.

The fourth factor does not require the Court "to incant a litany of the available lesser sanctions" before dismissing a case for failure to prosecute. *Shavers*, 516 F. App'x at 571 (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997)). Instead, in circumstances such as these, where a plaintiff ignores orders of the Court and fails to prosecute his case, dismissal is appropriate. *See Lee v. Glaxosmithkline, LLC*, No. 2:12-cv-02393-JTF-cgc, 2014 WL 691192, at *2 (W.D. Tenn. Feb. 21, 2014) (finding dismissal under Rule 41(b) appropriate when a plaintiff "failed to comply with several orders of the Court including to respond to an Order to Show Cause"); *Bass v. Leatherwood*, No. 13-cv-2882-JDT-tmp, 2014 WL

18

1665205, at *2 (W.D. Tenn. Apr. 24, 2014) (finding dismissal under Rule 41(b) appropriate where a plaintiff, inter alia, failed to respond to an order to show cause); *Clayborn v. Lee*, No. 3:22-cv-00458, 2022 WL 17420375, at *4 (M.D. Tenn. Dec. 5, 2022) (citing *Schafer*, 529 F.3d at 737) (holding that dismissal without prejudice "is particularly appropriate in cases of prolonged inactivity and where, as here, the plaintiff appears pro se"). Dismissal is particularly warranted here, where Ewing's pleadings do not even contain allegations of wrongdoing by Tennessee or Wellpack. Ewing's conduct demonstrates that he has no intention of prosecuting this case as to the State of Tennessee and Wellpack, and thus the Court recommends dismissal, rather than a lesser sanction, as three of the four factors weigh heavily in favor of dismissal.

## RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that the Motion to Dismiss be GRANTED and that Ewing's claims against Shelby County be dismissed with prejudice. With respect to the State of Tennessee and Wellpack, the Court RECOMMENDS that Ewing's claims against them be dismissed without prejudice for failure to effectuate service of process and to prosecute. Because these recommendations, if adopted, would resolve all remaining claims in this case, the Court RECOMMENDS dismissal of this action.

Respectfully submitted this 24th day of June, 2024.

s/ Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute waiver/forfeiture of objections, exceptions, and further appeal.

19